**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**Southern Division**

| | | |
|---|---|---|
| **JUNE G.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. CBD-18-3437** |
| | ) | |
| **ANDREW SAUL,**[1] | ) | |
| | ) | |
| **Acting Commissioner,** | ) | |
| **Social Security Administration** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION**

June G. ("Plaintiff") brought this action under 42 U.S.C. § 405(g) seeking judicial review

of the final decision of the Commissioner of the Social Security Administration

("Commissioner"). The Administrative Law Judge ("ALJ") denied Plaintiff's claim for

Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("SSA")

beginning March 16, 2015. Before the Court are Plaintiff's Motion for Summary Judgment,

ECF No. 15, ("Plaintiff's Motion"), Plaintiff's Alternative Motion for Remand, ECF No. 15,

("Plaintiff's Alternative Motion") and Defendant's Motion for Summary Judgment

("Commissioner's Motion"), ECF No. 18. The Court has reviewed the motions, related

memoranda, and the applicable law. No hearing is deemed necessary. *See* Loc. R. 105.6 (D.

Md.). For the reasons presented below, the Court hereby **DENIES** Plaintiff's Motion, **DENIES**

---

[1] When this proceeding began, Nancy Berryhill was the Acting Commissioner of the Social Security Administration. On June 17, 2019, Andrew Saul was sworn in as Commissioner and is therefore, automatically substituted as a party. *See* Fed. R. Civ. P. 25(d); *see also* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

Commissioner's Motion, **GRANTS** Plaintiff's Alternative Motion, and **REMANDS** the ALJ's decision pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion. A separate order will issue.

## I.    Procedural Background

On December 11, 2015, Plaintiff filed for DIB under Title II of the SSA, alleging disability beginning March 16, 2015. R. 68.[2] Plaintiff alleged disability due to degenerative disc disease, fibromyalgia, history of seizure disorder, mood disorder and anxiety disorder. R. 25; Mem. in Supp. of Pl.'s Mot. 2, ECF No. 15–1. Plaintiff's claims were initially denied on June 2, 2016, R. 87, and upon reconsideration on October 19, 2016. R. 107, 23.[3] An administrative hearing was held on October 16, 2017. R. 23, 43. On February 23, 2018, the ALJ found that Plaintiff was not disabled and denied Plaintiff's claim for DIB. R. 36. Plaintiff sought review by the Appeals Council, which concluded on September 19, 2018, that there was no basis for granting the request for review. R. 1–6. Plaintiff subsequently filed an appeal with this Court. ECF No. 1.

## II.    Standard of Review

On appeal, the Court has the power to affirm, modify, or reverse the decision of the ALJ "with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (2019). The Court must affirm the ALJ's decision if it is supported by substantial evidence and the ALJ applied the correct law. *Id.* ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."); *see also Russell v.*

---

[2] The ALJ listed Plaintiff's filing date as December 14, 2015. R. 23. Defendant listed Plaintiff's filing date as January 2016. Def.'s Mem. in Supp. of Mot. 1. Plaintiff listed the filing date as December 11, 2015. Pl.'s Mem in Supp. of Mot. 2. Upon review of the record, the Court finds Plaintiff listed the correct date.

[3] The ALJ erroneously listed the initial denial date as December 11, 2015. R. 23.

*Comm'r of Soc. Sec.*, 440 F. App'x 163, 164 (4th Cir. 2011) (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)). "In other words, if the ALJ has done his or her job correctly and supported the decision reached with substantial evidence, this Court cannot overturn the decision, even if it would have reached a contrary result on the same evidence." *Schoofield v. Barnhart*, 220 F. Supp. 2d 512, 515 (D. Md. 2002). Substantial evidence is "more than a mere scintilla." *Russell*, 440 F. App'x at 164. "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see also Hays*, 907 F.2d at 1456 (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (internal quotation marks omitted) ("It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence.").

The Court does not review the evidence presented below *de novo*, nor does the Court "determine the weight of the evidence" or "substitute its judgment for that of the Secretary if his decision is supported by substantial evidence." *Hays*, 907 F.2d at 1456 (citations omitted); *see also Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972) ("[T]he language of § [405(g)] precludes a *de novo* judicial proceeding and requires that the court uphold the Secretary's decision even should the court disagree with such decision as long as it is supported by 'substantial evidence.'"). The ALJ, not the Court, has the responsibility to make findings of fact and resolve evidentiary conflicts. *Hays*, 907 F.2d at 1456 (citations omitted). If the ALJ's factual finding, however, "was reached by means of an improper standard or misapplication of the law," then that finding is not binding on the Court. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987) (citations omitted).

The Commissioner shall find a person legally disabled under Title II if he is unable "to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a) (2012). The Code of Federal Regulations outlines a five-step process that the Commissioner must follow to determine if a claimant meets this definition:

1) Determine whether the plaintiff is "doing substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i) (2012). If he is doing such activity, he is not disabled. If he is not doing such activity, proceed to step two.

2) Determine whether the plaintiff has a "severe medically determinable physical or mental impairment that meets the duration requirement in § [404.1509], or a combination of impairments that is severe and meets the duration requirement." 20 C.F.R. § 404.1520(a)(4)(ii) (2012). If he does not have such impairment or combination of impairments, he is not disabled. If he does meet these requirements, proceed to step three.

3) Determine whether the plaintiff has an impairment that "meets or equals one of [the C.F.R.'s] listings in appendix 1 of this subpart and meets the duration requirement." 20 C.F.R. § 404.1520(a)(4)(iii) (2012). If he does have such impairment, he is disabled. If he does not, proceed to step four.

4) Determine whether the plaintiff retains the "residual functional capacity" ("RFC") to perform "past relevant work." 20 C.F.R. § 404.1520(a)(4)(iv) (2012). If he can perform such work, he is not disabled. If he cannot, proceed to step five.

5) Determine whether the plaintiff can perform other work, considering his RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v) (2012). If he can perform other work, he is not disabled. If he cannot, he is disabled.

20 C.F.R. §§ 404.1520(a)(4) (2012). Plaintiff has the burden to prove that he is disabled at steps one through four, and Commissioner has the burden to prove that Plaintiff is not disabled at step five. *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992).

The RFC is an assessment that represents the most a claimant can still do despite any physical and mental limitations on a "regular and continuing basis." 20 C.F.R. § 404.1545(b)-(c)

4

(2012). In making this assessment, the ALJ "must consider all of the claimant's 'physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [the claimant's] ability to work.'" *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (citing *Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016)); *See also* 20 C.F.R. § 404.1545(a) (2012). The ALJ must present a "narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g. daily activities, observations)," and must then "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *See Thomas*, 916 F.3d at 311; SSR 96-8p, 1996 WL 374184 at *7 (S.S.A. July 2, 1996). "Once the ALJ has completed the function-by-function analysis, the ALJ can make a finding as to the claimant's RFC." *Thomas*, 916 F.3d at 311. "Ultimately, it is the duty of the [ALJ] reviewing the case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts of evidence." *Hays*, 907 F.2d at 1456 (citing *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)). "[R]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (citing *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)).

### III.    Analysis

The ALJ evaluated Plaintiff's claim using the five-step sequential evaluation process. R. 25–36. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since March 16, 2015, the alleged onset date of Plaintiff's disability. R. 25. At step two, under 20 C.F.R. § 404.1520(c) the ALJ determined that Plaintiff had the following severe impairments: "degenerative disc disease; fibromyalgia; history of a seizure disorder;

mood disorder; and an anxiety disorder." R. 25. The ALJ stated that the listed impairments

"significantly limit the ability to perform basic work activities as required by SSR 85-28." R. 25.

At step three, the ALJ determined Plaintiff "does not have an impairment or combination of

impairments that meets or medically equals the severity of one of the listed impairments in 20

C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526)."

R. 25. Further, the ALJ also determined that Plaintiff had a moderate limitation with regard to

concentrating, persisting, or maintaining pace. R.26. Before turning to step four, the ALJ

determined that claimant had the RFC to perform sedentary work as defined in 20 C.F.R. §

404.1567(a) with the following additional limitations:

> [Plaintiff] can occasionally climb ramps and stairs; she can never
> climb ladders, ropes or scaffolds; she occasionally stoop, [sic]
> kneel, crouch, or crawl; [Plaintiff] can never work around
> unprotected heights; and she can never operate a motor vehicle.
> [Plaintiff] can never work around dangerous moving mechanical
> parts, sharp objects, or open flames. [Plaintiff] is limited to simple
> tasks with occasional interaction with supervisors, co-workers, and
> the general public.

R. 27. At step four, the ALJ determined Plaintiff is unable to perform any past relevant work. R.

34. At step five, with the benefit of a Vocational Expert ("VE"), the ALJ found that "there are

jobs that exist in significant numbers in the national economy that plaintiff can perform." R. 35.

These jobs include: Document Preparer, Semi-Conductor Bonder, and Touch-Up Screener. R.

35.

On appeal, Plaintiff argues that the Court should reverse the ALJ's decision, or in the

alternative remand this matter for a new administrative hearing, alleging that the ALJ's RFC

determination was not supported with substantial evidence because: (1) The RFC the ALJ

presented to the VE is legally insufficient; and (2) The ALJ failed to give proper weight to the

opinions of Plaintiff's treating physician. Pl.'s Mem. in Supp. of Mot. 8–12.

**A. Residual Functional Capacity**

Plaintiff asserts that the RFC presented to the VE is insufficient because it does not reflect Plaintiff's issues with seizures, lower back pain, fibromyalgia fatigue, focus, concentration, memory issues, anxiety, depression, seizures, and pain. *Id.* at 11. Plaintiff then contends that "[h]ad the ALJ included exertional and mental limitations in his RFC finding, a favorable decision would be warranted." *Id.* The Court finds that Plaintiff's argument is essentially a challenge to the ALJ's RFC, therefore, the Court must analyze whether the RFC was supported by substantial evidence.

Generally, the Court will affirm the Social Security Administration's disability determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence. *Woods v. Berryhill*, 888 F.3d 686, 691 (4th Cir. 2018) (citing *Mascio*, 780 F.3d at 634). But when performing an RFC assessment, the ALJ must provide a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts and nonmedical evidence. SSR 96-8p, 1996 WL 374184, at *7 (S.S.A). "In other words, the ALJ must *both* identify evidence that supports his conclusion *and* 'build an accurate logical bridge from [that] evidence to his conclusion.'" *Woods*, 888 F.3d at 694 (emphasis in original).

A proper RFC analysis has three components: (1) evidence; (2) logical explanation; and (3) conclusion. *Thomas*, 916 F.3d at 311. The ALJ's logical explanation is just as important as the other two. *Id*. Without a proper narrative discussion from the ALJ, it is impossible for the Court to determine whether the decision was based on substantial evidence. *Geblaoui v. Berryhill*, No. CBD-17-1229, 2018 WL 3049223, at *3 (D. Md. June 20, 2018) (citing *Jones v. Astrue*, No. SKG-09-1683, 2011 WL 5833638, at *14 (D. Md. Nov. 18, 2011)). "The ALJ has

the obligation to consider *all* relevant medical evidence and cannot simply cherrypick facts that support a finding of nondisability while ignoring evidence that points to a disability finding." *Lewis v. Berryhill*, 858 F.3d 858, 869 (4th Cir. 2017) (emphasis added). The ALJ must also include "a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." *Monroe*, 826 F.3d at 189 (citing *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013)).

      1. **The ALJ's RFC was insufficient because it failed to include an explicit conclusion about how Plaintiff's mental limitations affect her ability to perform job-related tasks for a full workday.**

Plaintiff asserts that the ALJ failed to sufficiently address Plaintiff's mental limitations in the RFC. Mem. in Supp. of Pl.'s Mot. 11.[4] Defendant avers that the ALJ complied with *Mascio* because the "ALJ provides an explanation as to how he arrived at the RFC limitation to simple tasks with only occasional interaction with others, in light of the finding of moderate difficulties in [concentration, pace, and persistence]." Mem in Supp. of Def.'s Mot. 11, ECF No. 18–1. Further, Defendant contends that the ALJ "fully discussed the relevant medical, opinion, and other evidence relating to Plaintiff's mental functioning, supplying a rationale for the mental RFC findings." *Id.* The Court agrees with Plaintiff.

In *Mascio v. Colvin*, the Fourth Circuit held that a RFC assessment must account for an ALJ's step three finding of moderate limitations in concentration, persistence, or maintaining pace beyond limiting a claimant to performing only "simple, routine tasks." 780 F.3d 632, 638 (4th Cir. 2015). This Court further clarified that, "[p]ursuant to *Mascio*, once an ALJ has made a step three finding that a claimant suffers from moderate difficulties in concentration, persistence,

---

[4] Plaintiff does not explicitly raise a *Mascio* issue, however, the Court finds that a *Mascio* analysis is required when analyzing whether an RFC which has a mental limitation is supported by substantial evidence.

or pace, the ALJ must either include a corresponding limitation in his RFC assessment, or explain why no such limitation is necessary." *Talmo v. Comm'r, Soc. Sec.,* Civ. No. ELH-14-2214, 2015 WL 2395108, at *3 (D. Md. May 19, 2015).

The functional area of concentration, persistence, or maintaining pace, "refers to the abilities to focus attention on work activities and stay on task at a sustained rate." 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00(E)(3). Since *Mascio*, courts have reviewed various ALJs' attempts to include corresponding limitations in their RFC assessments for moderate limitations in this functional area.[5]

In *Thomas*, the ALJ found the plaintiff had moderate limitations in concentration, persistence, or maintaining pace, and concluded that the plaintiff had a RFC to perform light work with the following additional mental limitations:

> [The plaintiff] is able to follow short, simple instructions and perform routine tasks, but no work requiring a production rate or demand pace. She can have occasional public contact or interaction and frequent, but not continuous, contact or interaction with coworkers and supervisors. [She] must avoid work involving crisis situations, complex decision making, or constant changes in a routine setting.

*Thomas*, 916 F.3d at 310 (citations omitted). In reversing the lower court's decision, the Fourth Circuit made it clear that when an ALJ finds a claimant has moderate limitations in

---

[5] *See, e.g.*, *Wilson v. Comm'r, Soc. Sec. Admin.*, Civ. A. No. ADC-17-2666, 2018 WL 3941946, at *5–6 (D. Md. Aug. 16, 2018) (holding limitations for interactions with other individuals does not address concentration, persistence, or maintaining pace; rather it addresses social functioning); *McDonald v. Comm'r, Soc. Sec. Admin.*, No. SAG-16-3041, 2017 WL 3037554, at *4 (D. Md. July 18, 2017) (concluding "a RFC restriction that [the claimant could] perform 'simple, routine, and repetitive tasks involving only simple work-related decisions with few if any workplace changes and only occasional supervision' " was insufficient to meet *Mascio* requirements); *Steele v. Comm'r, Soc. Sec.*, Civ. No. MJG-15-1725, 2016 WL 1427014, at *4 (D. Md. Apr. 11, 2016) (citing SSR 96-9P) (holding that when a RFC includes durational limitations an ALJ must consider that the normal 8-hour workday already includes breaks approximately every two (2) hours and provide further explanation as to how limiting someone to breaks every two hours "adequately accounts for a moderate limitation in the ability to stay on task" or else it does not meet the *Mascio* requirements).

concentration, persistence, or maintaining pace, the ALJ is expected to include "explicit conclusions about how [the claimant's] mental limitations affect her ability to perform job-related tasks for a full workday—a benchmark established by the [S.S.A.'s] own regulations." *Id.* at 312 (citing SSR 96-8P, 1996 WL 374184 at *2).

The ALJ in this case found in step three that Plaintiff has a moderate limitation in concentration, persistence, or maintaining pace. R. 26. After making this determination, the ALJ went onto state the reasons why he rejected Plaintiff's assertion that she had difficulties paying attention by citing to portions of the record which contradict Plaintiff's assertion. R. 26–27. The ALJ then stated Plaintiff's RFC and included the following limitation: "[Plaintiff] is limited to simple tasks with occasional interaction with supervisors, co-workers, and the general public." R. 27. As established by the Fourth Circuit, this limitation and explanation does not account for Plaintiff's moderate limitations in concentration, persistence, or maintaining pace. *Mascio*, 780 F.3d at 638. Absent additional explanation, remand is necessary. *Talmo,* 2015 WL 2395108, at *3.

The ALJ's limitation for Plaintiff to "simple tasks with occasional interaction with supervisors, co-workers, and the general public," R. 27, does not account for whether Plaintiff can perform these tasks for a full workday and workweek. *See McDonald*, 2017 WL 3037554, at *4 (holding that an RFC limiting a claimant to "simple, routine, and repetitive tasks" did not adequately account for the claimant's ability to sustain work throughout an eight-hour workday where the claimant had moderate difficulties in concentration, persistence, and pace). Plaintiff may be able to perform simple tasks with limited interaction with people for a short period of time, but the Court cannot without further explanation, ascertain whether the ALJ believes

Plaintiff can perform these tasks for an entire workday as required by the Fourth Circuit. *Thomas*, 916 F.3d at 312.

In the narrative discussion pertaining to the RFC analysis, the ALJ discussed Plaintiff's mental health impairments. R. 30–31. First, the ALJ reviewed the evidence pertaining to Plaintiff's mental health history and treatment from February 2015 to April 2016. R. 30. The ALJ cited to evidence which showed Plaintiff's mood regularly fluctuated from depressed to "happy and healthy." R. 30. Specifically, in February 2016, a "mental status examination revealed impaired thought content and anxious mood, however, [Plaintiff] had good eye contact, her affect was appropriate, her concentration was normal, her thought processes were appropriate, her focus was normal, and her cognition was intact." R. 30. Second, the ALJ noted that when Plaintiff underwent a consultative examination, her "mood was depressed and her affect was anxious, however, her thought processes were logical, she appeared neat and well groomed, she had good abstract reasoning skills, her memory was intact, and her judgment and insight were fair." R. 30. However, within the same examination Plaintiff showed her "processing speed was in the borderline range, her auditory memory was in the low average range, her visual memory was in the low average range, [and] her immediate memory was in the low average range . . . ." R. 30–31. Third, the ALJ reviewed evidence pertaining to Plaintiff's mental health and treatment history from May 2016 to May 2017. R. 31. Again, the ALJ's citation shows that Plaintiff's mental health fluctuated from month to month, but that she "indicated to be psychiatrically stable on medications." R. 31. Lastly, the ALJ concluded that greater restrictions to Plaintiff's RFC in regards to her mental symptoms are not supported by the evidence of record because:

> While there is some anxiety, [Plaintiff] generally interacted
> normally with medical providers and made good eye contact.

> Despite allegations of debilitating symptoms, [Plaintiff] was noted to be stable on medications. While [Plaintiff] testified that she had difficulties memory, [sic] mental status examination generally revealed intact memory. [Plaintiff] reported difficulties completing tasks, but generally had normal cognitive function and intact thought processes. Despite allegations of debilitating mental symptoms, the [Plaintiff] was generally in no acute distress. Based on this evidence, the undersigned finds that [Plaintiff's] subjective allegations are inconsistent with the medical evidence and other medical evidence in the record.

R. 31 (internal citations omitted).

The Court finds this explanation is mostly supported by the evidence available in the record. The ALJ's explanation thoroughly tracks Plaintiff's longitudinal course of treatment for her mental disorders, the observations of her providers, Plaintiff's activities of daily living, and the opinion evidence on record. However, the ALJ failed to draw an "explicit conclusion about how [Plaintiff's] mental limitations affect [her] ability to perform job-related tasks for a full workday—a benchmark established by the Administration's own regulations." *Thomas*, 916 F.3d at 312. In fact, at no point in his decision does the ALJ discuss Plaintiff's "ability to sustain work at a competitive pace over a typical workday." *See Beau S. v. Comm'r, Soc. Sec. Admin.*, Civ. No. SAG-18-2083, 2019 WL 3208002, at *3 (D. Md. July 16, 2019) (reversing and remanding an ALJ's decision where it fails to address this same capability). Remand is required to allow the ALJ to establish for how long and under what conditions Plaintiff is able to focus her attention on work activities and stay on task at a sustained rate. *Sean P. v. Saul, Comm'r of Soc. Sec.*, Civ. No. TMD 18-2072, 2019 WL 3778706, at *5 (D. Md. Aug. 12, 2019) (citing *Thomas*, 916 F.3d at 312 n.5).

## 2. The ALJ's RFC concerning Plaintiff's physical impairment was insufficient.

Plaintiff asserts that the ALJ failed to sufficiently address Plaintiff's physical limitations in the RFC. Mem. in Supp. of Pl.'s Mot. 11. The Court agrees.

In the narrative discussion pertaining to the RFC analysis, the ALJ discussed Plaintiff's physical impairments. R. 28–30. First, the ALJ thoroughly reviewed the evidence pertaining to Plaintiff's physical and neurological health history and treatment from March 2014 to July 2017. R. 28–30. The ALJ addressed each of Plaintiff's physical impairments and provided a synopsis of Plaintiff's medical history with citations to the record. R. 28–30. The ALJ then concluded that Plaintiff is limited to sedentary work and that greater limitations are not supported by the evidence of record because:

> Objective imaging of the spine revealed some degenerative changes, however, they also demonstrated a solid fusion. Despite allegations of debilitating pain, [Plaintiff] was generally in no acute distress. While [Plaintiff] asserted difficulties in standing and walking, [Plaintiff] generally had a normal gait and normal coordination. Despite allegations of lifting and carrying, [Plaintiff] generally had full range of motion and full strength. [Plaintiff] testified that she had 15 seizures a month, however, the evidence does not support that level of frequency. The evidence also shows that [Plaintiff] was not entirely compliant with her anti-seizure medications. Moreover, the evidence shows that electroencephalograms were generally normal and her seizure disorder was stable on medications. As to [Plaintiff's] fibromyalgia, [Plaintiff] exhibited tender points at an examination, however, the longitudinal evidence does not consistently show these abnormalities. [Plaintiff] also did not generally complain of fatigue or other related constitutional symptoms. As such, [Plaintiff] does experience some levels of pain and limitations, but only to the extent described in the residual functional capacity above.

R. 30 (internal citations omitted).

The Court finds the ALJ provided a detailed and thorough narrative discussion which identified evidence that supported his conclusion that Plaintiff could perform sedentary work as required by SSR 96-8p, 1996 WL 374184, at *7 (S.S.A). The ALJ also built a logical bridge from the evidence cited in the narrative discussion to his conclusion. *Woods*, 888 F.3d at 694. The ALJ identified Plaintiff's allegations, cited to evidence contradicting Plaintiff's assertion, explained why the evidence contradicts Plaintiff's allegations, and made his conclusion. However, where the ALJ's analysis falls short is the failure to discuss why the evidence the ALJ cited as support for his conclusion was more credible than Plaintiff's allegations.

For instance, the ALJ stated, "Objective imaging of the spine revealed some degenerative changes, however, they also demonstrated a solid fusion." R. 30. The ALJ fails to explain why the evidence of a solid fusion is more credible than the degenerative changes shown to the spine. Further, the ALJ stated, "[d]espite allegations of lifting and carrying, [Plaintiff] generally had a full range of motion and strength." R. 30. Although the ALJ cited to evidence which contradicted Plaintiff's allegation, the ALJ failed to explain why evidence of full range of motion and strength is more credible than Plaintiff's allegation. Lastly, the ALJ stated "[a]s to [Plaintiff's] fibromyalgia, [Plaintiff] exhibited tender points at an examination, however, the longitudinal evidence does not consistently show these abnormalities." R. 30. The ALJ fails to explain why the tender points exhibited at Plaintiff's examination is not credible, and why the longitudinal evidence is more credible. Without knowing why certain evidence is considered more credible than others, the Court has no way of evaluating the basis of the ALJ's decision, therefore, for this reason, and the reasons stated above, the proper course is to remand the case to the agency for additional explanation. *Radford*, 734 F.3d at 295; *See also Monroe*, 826 F.3d at 188.

**B. The ALJ did not fail to accord proper weight to Plaintiff's treating physicians' opinions in deciding to give their opinions less than controlling weight.**

Plaintiff alleges that the ALJ failed to give proper weight to the opinion of Plaintiff's treating physicians. Mem. in Supp. of Pl.'s Mot. 8. Specifically, Plaintiff challenges the weight the ALJ accords to the opinions of: (1) Dr. Lawrence Shin, a treating physician; (2) Dr. Mehrallah Khan, a treating physician; and (3) Dr. Milan Joshi, a treating physician. *Id.* at 9–10.

Generally, the opinions of treating physician's are given greater weight than the opinions of other examining physicians because they are "likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone . . . ." 20 C.F.R. § 404.1527(c)(2) (2017). If a treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the claimant's] case record[,]" the ALJ must give it controlling weight. *Lewis*, 858 F.3d at 867 (citing 20 C.F.R. § 404.1527(c)(2)). "However, where a treating physician's opinion is not supported by clinical evidence or is inconsistent with other substantial evidence it should be afforded significantly less weight." *Skinner v. Berryhill*, No. ADC-16-3957, 2017 WL 5624950, at *9 (D. Md. Nov. 11, 2017) (citing *Lewis*, 858 F.3d at 867). An ALJ is not required to give controlling weight to a treating physician's opinion on the ultimate issue of disability because that issue remains for the Commissioner alone. 20 C.F.R. § 414.1527(d)(1) (2017).

"Generally, courts should not disturb an ALJ's decision as to the weight afforded to a medical opinion absent some indication that the ALJ 'dredged up specious inconsistencies.'" *Thompson v. Berryhill*, No. 3:16cv815, 2018 WL 715597, at *4 (D. Md. Jan. 18, 2018) (citing *Dunn v. Colvin*, 607 Fed. App'x. 264, 267 (4th Cir. 2015)). If a treating source's opinion is not

given controlling weight, the ALJ must consider the following factors in deciding the appropriate weight to give the treating physician's opinion:

> (1) the length and frequency of the treatment relationship; (2) the nature and extent of the treatment relationship; (3) the amount of evidence supporting the physician's opinion; (4) the consistency of the opinion with the record as a whole; (5) whether the physician is a specialist giving an opinion about his area of specialty; and (6) any other factors which tend to support or contradict the opinion.

*Skinner*, No. ADC-16-3957, 2017 WL 5624950, at *9 (citing 20 § C.F.R. 404.1527(c)(1)–(6)). "An ALJ need not apply these factors in a mechanical fashion, so long as the ALJ articulates the reasoning behind the weight accorded to the opinion." *Id.* (citing *Carter v. Astrue*, No. CBD-10-1882, 2011 WL 3273060, at *6 (D. Med. July 27, 2011)). "The regulations require only that 'good reasons' be provided for the weight given to a treating physician's opinion." *Id.* (citing 20 C.F.R. § 404.527(c)(2)).

### 1. Dr. Lawrence Shin

Plaintiff alleges that the ALJ failed to give the proper weight to the opinion of Dr. Shin because the ALJ's reasoning "amounts to nothing more than a few boilerplate sentences and is inaccurate on its face." Mem. in Supp. of Pl.'s Mot. 9. Specifically, Plaintiff contends that the ALJ failed to discuss:

> [T]he enhancing soft tissue surrounding the L5 nerve roots bilaterally; facet arthropathy significantly at L3-L4 with ligamentum flavum hypertrophy and bulging disc; status post kyphoplasty involving the superior endplate at L1 degenerative disc disease at multiple level; and facet arthropathy at L1-L3; Plaintiff's restricted range of motion; and fibromyalgia.

*Id.* (citing R. 1013–1014). Defendant avers that the limited weight given to Dr. Shin's opinion by the ALJ was not improper because the ALJ provided "provided specific reasons for the assignment of weight grounded in the record . . ." Mem. in Supp. of Def.'s Mot. 4. Further,

Defendant contends that the ALJ's rationale is not boilerplate because "it addresses specific evidence from the record." *Id.* at 5. The Court agrees with Defendant.

The ALJ's analysis as to Dr. Shin's 2017 assessment of Plaintiff is as follows:

> In July 2017, Lawrence Shin, M.D., a treating source, indicated that [Plaintiff] had reached maximum medical improvement, her sitting, standing and walking were limited to less than 30 minutes at one time and less than two hours in one day, and lifting and carrying were limited less than 10 pounds. [Plaintiff] was unable to bend, twist, lift, stoop, crouch, crawl, or climb. It was also indicated that [Plaintiff] was not able to tolerate exposure to vibration, temperature extremes, moving machinery, or unprotected heights (citation omitted). Additionally, he indicated that [Plaintiff] was unable to sit or stand, she needed periods of walking around, and he recommended permanent disability. The undersigned gives this opinion limited weight. The evidence of record supports that [Plaintiff] can perform a range of sedentary work. This includes finding that [Plaintiff] had normal gait, normal muscle tone, normal coordination, and [Plaintiff] was in no acute distress. Moreover, it includes examination, and no focal deficit. This opinion is also not entirely consistent with the opinions of State agency medical consultant, the consultative examiner, and [Plaintiff's] activities of daily living. It is also inconsistent with an electroencephalogram that revealed normal tracing other than a non-specific temporal sharp.

R. 32 (internal citations omitted).

Plaintiff relies on *Lewis* in alleging that the ALJ erred by not giving controlling weight to Plaintiff's treating physician. Mem. in Supp. of Pl.'s Mot. 8. However, the decision in *Lewis* is not representative of the facts in this case. The court in *Lewis* noted that "the ALJ's rejection of Lewis' treating physician sources [was] perfunctory;" finding that "all of the medical professionals who examined Lewis provided opinions consistent with her treating physicians . . . ." *Lewis*, 858 F.3d at 867–68. In the present case, the ALJ's decision reflects contradicting opinions from the State agency medical consultants and the treating physicians. The diagnoses from the opinion evidence provided and cited to in the ALJ's opinion vary from a

recommendation of permanent disability to finding that Plaintiff could perform light work, R. 31–34, therefore, it is not like *Lewis*.

The ALJ first acknowledged Dr. Shin as a treating physician and articulated Dr. Shin's opinion and recommendation. R. 32. The ALJ then then pointed to different parts of the record which contradict Dr. Shin's opinion and "supports that [Plaintiff] can perform a range of sedentary work". R. 32. For instance, the ALJ pointed to evidence which showed Plaintiff had a normal gait, normal muscle tone, normal coordination, was not in acute distress, had good strength, normal cerebellar function, normal sensory examination, and no focal deficit. R. 32, 160–67. These findings are inconsistent with Dr. Shin's opinion that Plaintiff is permanently disabled.

Plaintiff cites to a 2016 MRI which the ALJ did not discuss when addressing Dr. Shin's 2016 assessment, Mem. in Supp. of Pl.'s Mot. 9, however, there is no requirement that the ALJ address every piece of evidence in the record when articulating the weight to afford a treating physician's opinion. *Thomas*, 916 F.3d at 312. Further, Plaintiff's assertion that the ALJ failed to "cite any evidence contradicting Dr. Shin's limitations regarding [Plaintiff's] ability to sit, stand or walk" is inaccurate. Mem. in Supp. of Pl.'s Mot. 9. The ALJ specifically cited to portions of the record contradicting these limitations in his analysis of Dr. Shin's opinion. R. 32. It is not the within the Court's power to reweigh the evidence and determine whether Dr. Shin's opinion or the ALJ's cited medical evidence is more convincing. *Hays*, 907 F.2d at 1456.

Lastly, Plaintiff contends her fibromyalgia "must have escaped the ALJ because he fails to discuss her subjective complaints of joint pain, fatigue, numbness and tingling." Mem. in Supp. of Pl.'s Mot. 9. However, the ALJ directly addresses Plaintiff's fibromyalgia by stating:

> As to [Plaintiff's] fibromyalgia, [Plaintiff] exhibited tender points at an examination, however, the longitudinal evidence does not

consistently show these abnormalities. [Plaintiff] also did not
generally complain of fatigue or other related constitutional
symptoms. As such, [Plaintiff] does experience some levels of
pain and limitations, but only to the extent described in the residual
capacity above.

R. 30. Consequently, the Court finds that the ALJ's reasoning for according limited weight to

Dr. Shin's opinion was supported by good reasons and substantial evidence in the record.

### 2. Dr. Mehrallah Khan

Plaintiff asserts that the ALJ failed to give Dr. Khan's opinion the proper weight because

the ALJ "literally copied and pasted from his explanation of Dr. Shin's opinion . . . [and] fail[ed]

to address her seizure activity, how certain medications trigger a seizure, her resulting altered

memory, brain fog, disorientation, and word finding difficulty." Mem. in Supp. of Pl.'s Mot. 10.

The Court disagrees.

The ALJ's analysis as to Dr. Khan's 2017 assessment of Plaintiff is as follows:

As for opinion evidence, in July 2017, Mehrallah Khan, M.D., a
treating source, indicated that [Plaintiff] was incapable of even low
stress work, she could sit for four hours, she could stand and/or
walk for less than two hours, she could lift and carry 10 pounds
frequently, she could occasionally lift and carry 20 pounds, and she
was likely to miss more than four days per month. The
undersigned gives this opinion limited weight. The evidence of
record supports that [Plaintiff] can perform a range of sedentary
work. This includes findings that [Plaintiff] had a normal gait,
normal muscle tone, normal coordination, and [Plaintiff] was in no
acute distress. Moreover, it includes findings that [Plaintiff] had
good strength, normal cerebellar function, normal sensory
examination, and no focal deficit. This opinion is also not entirely
consistent with the opinions of State agency medical consultants,
the consultative examiner, and [Plaintiff's] activities of daily
living. It is also inconsistent with an electroencephalogram that
revealed normal tracing other than a non-specific temporal sharp.

R. 31–32 (internal citations omitted). The ALJ addressed Dr. Khan's opinion in the same

manner he addressed Dr. Shin's. The ALJ initially identified Dr. Khan and his role as treating

physician.  R. 32.  Then, the ALJ stated Dr. Khan's opinion as to Plaintiff's condition.  R. 32.

The ALJ cited to different portions of the record which contradict Dr. Khan's findings as to

Plaintiff's condition.  For instance, the ALJ cited to Dr. Khan's treatment notes which stated

Plaintiff "has good strength in both upper and lower extremities with normal muscle tone."  R.

1061.  Further, the ALJ cited to evidence showing Plaintiff had a normal gait.  R. 1063.

Since the ALJ cited to Dr. Khan's treatment notes which were inconsistent with Dr.

Khan's opinion, and since the ALJ provided good reasons for the weight he accorded to Dr.

Khan's opinion, the Court finds that the ALJ did not give improper weight to Dr. Khan's

opinion.

### 3.  Dr. Milan Joshi

Plaintiff contends that the ALJ failed to give proper weight to Dr. Joshi's opinion because

the ALJ "fail[ed] to mention Dr. Joshi's treatment notes that indicate [Plaintiff] has anxiety

attacks and issues with her memory . . . [and] it is also unknown which reports mention

[Plaintiff] being stable on her medications."  Mem. in Supp. of Pl.'s Mot. 10.  The Court

disagrees.

The ALJ's analysis as to Dr. Joshi 2017 assessment of Plaintiff is as follows:

> In July 2017, Milan Joshi, M.D., a treating source, indicated that
> [Plaintiff] had marked limitations in the following areas: the ability
> to carry out very short and simple instructions; the ability to carry
> out detailed instructions; her ability to maintain attention and
> concentration for extended periods; the ability to perform activities
> within a schedule; her ability to sustain an ordinary routine; her
> ability to work in coordination with others; her ability to make
> simple work-related decisions; the ability to interact appropriately
> with the general public; and her ability to complete a normal work
> day.  [Plaintiff] had marked limitation in the ability to respond
> appropriately to changes in the work setting, her ability to be aware
> of normal hazards, her ability to travel to unfamiliar places, and
> her ability to set realistic goals.  The undersigned gives this
> opinion limited weight.  This opinion is not entirely consistent with

> the evidence of record, including findings of her affect was
> appropriate, her thought process was appropriate, her thought
> content was normal, and her cognition was intact.  Moreover, it
> includes findings of normal mood and affect.  It is also inconsistent
> with reports that [Plaintiff] was psychiatrically stable on
> medications.

R. 32 (internal citations omitted).

Plaintiff asserts that the ALJ failed to mention Dr. Joshi's treatment notes indicating Plaintiff has anxiety attacks and memory issues.  Mem in Supp. of Pl.'s Mot. 10.  To support this assertion, Plaintiff cites to physiotherapy records which list anxiety and depression as precautions.[6]  Notwithstanding that the records Plaintiff cited to pre-date Plaintiff's alleged onset date, the ALJ found inconsistencies in Dr. Joshi's treatment notes which show that Plaintiff's affect and thought process were appropriate, her thought content was normal, and she was psychiatrically stable on medication.  R. 1089, 1091.  The Court finds that the inconsistencies the ALJ stated were not "dredged up inconsistencies" and that the ALJ provided a good reason to accord only limited weight to Dr. Joshi's opinion.

## IV.    Conclusion

Based on the foregoing, the Court hereby **DENIES** Plaintiff's Motion, **DENIES** Commissioner's Motion, **GRANTS** Plaintiff's Alternative Motion, and **REMANDS** this matter for further proceedings.


December 16, 2019                                      _____/s/_____
                                                       Charles B. Day
                                                       United States Magistrate Judge


CBD/hjd

_____

[6] The date of the records cited date from July 2014 to August 2014.